## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Norfolk Division

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE,**

      **Plaintiff,**

**v.**                                               **CIVIL ACTION NO. 2:14cv236**

**ALAN GERACI, and**
**JONLARY CIRCLE ENTERPRISES, LLC,**

      **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Plaintiff JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty")'s

Motion for Default Judgment against Defendants Alan Geraci ("Geraci") and Jonlary Circle

Enterprises, LLC ("JCE"). ECF No. 7. Defendants filed both an untimely Answer to the

Complaint and an untimely Opposition to Plaintiff's Motion. The Court held a hearing on this

matter on September 16, 2014, at which Defendants failed to appear. This matter is now ripe for

judicial determination. For the reasons stated herein, Plaintiff's Motion for Default Judgment is

**GRANTED**. It is **ORDERED** that judgment be entered on behalf of Plaintiff and against

Defendant, in a total amount of **$267,286.83**. Plaintiff's request for costs and attorney's fees is

**DEFERRED**. Defendants are also **PERMANENTLY ENJOINED AND RESTRAINED**

from certain acts as outlined at the conclusion of this Order.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 20, 2014, Plaintiff filed a Complaint against Defendants, alleging that

Defendants breached franchise agreements relating to the operation of Liberty Tax Service tax

preparation businesses. ECF No. 1. Liberty states that it entered into three franchise agreements

with Geraci, and that pursuant to each agreement, Geraci operated a different Liberty franchise

office located in southern California. *Id.* ¶¶ 7, 12, 17. Defendant JCE is a limited liability

company that held the Liberty franchise licenses. ECF No. 10. Defendant Geraci is a managing

member of JCE. *Id.* Defendants secured operating capital and financed the purchase of the

Liberty franchises by executing two promissory notes payable to Liberty. ECF No. 1 at ¶¶ 20-

22. According to Liberty, JCE was sent a letter of termination on January 3, 2014. *Id.* ¶¶ 25. In

its letter, Liberty informed JCE and Geraci that Defendants were terminated due to breaches of

the franchise agreements, including insolvency and failure to pay amounts owed to Liberty. *Id.*

Defendants have ceased making payments on their promissory notes and are now in default. *Id.*

¶¶ 28.

      The Complaint includes three counts of breach of contract:  Breach of franchise

agreements, breach of promissory notes, and accounts receivable.  As relief for the alleged

breaches, Liberty seeks: (1) judgment in an amount equal to 19 % of Defendants' gross revenues

for advertising and royalty fees lost by Liberty during the period Defendants breached the post-

termination obligations; (2) an injunction compelling Defendants ,their agents, and employees to

stop using literature or items bearing the Liberty Marks and to deliver to Liberty all customer

lists and associated records; (3) enforcement of a two-year non-compete clause; (4)

compensatory damages in the amount of $238,448.37, the amount currently due on the unpaid

promissory notes and accounts receivable; and (5) costs and attorney's fees.

      On June 5, 2014, the Summons and Complaint were served on both Defendants in

California. ECF No. 4. After three previous unsuccessful attempts at personal service, the

process server left Summonses for both Geraci and JCE with Geraci's stepson at Geraci's

California home. *Id.* Copies of each Summons were also mailed to Geraci's home on June 5, 2014. Defendants failed to timely respond to the Summons and Complaint.[1]

On July 9, 2014, Liberty filed a Request for Entry of Default, which asked the Clerk of Court to enter default as to Defendants Geraci and JCE pursuant to Fed. R. Civ. P. 55(a). ECF No. 5. The Clerk entered default as to Geraci and JCE pursuant to Fed. R. Civ. P. 55(a) on July 10, 2014.

On July 18, 2014, Liberty filed the instant Motion for Default Judgment against Geraci individually as guarantor, and against JCE. ECF No. 7. Pursuant to Local Rule 7(k) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Motion properly advised Defendants of their rights and obligations with respect to a Motion for Default Judgment filed in the United States District Court for the Eastern District of Virginia. *Id.* Plaintiff filed its Motion electronically and certified that it had served Defendants Geraci and JCE by first-class U.S. Mail at Geraci's home address and the San Marcos, California franchise address. *Id.* As before, Defendant failed to timely respond.

In its Motion for Default Judgment, Liberty moves for a judgment of $271,649.36 in damages as well as permanent injunctive relief. It asserts that absent Defendants being enjoined from continuing to use Liberty's Marks and customer lists, Liberty is "at risk of continued loss of goodwill and customers..." ECF No. 8. Liberty's damages figure comes from a combination of the amount currently owed on the promissory notes ($45,542.33), and the total amount past due for royalty and advertising fees under the franchise agreements ($192,924.04), and an estimate of the amount owed under the franchise agreement due to failure to comply with post-term

---

[1] Defendants' first filing, as discussed *infra*, was received on September 8, 2014, more than three months after the Complaint was filed.

obligations ($33,200.99)[2]. Further, Liberty contends that enforcement of its non-compete clause is necessary because failure to do so would "threaten[] Liberty's relationship with all franchisees." *Id.* Liberty supports its Motion with affidavits from two employees, a copy of a promissory note, a spreadsheet of accounts receivable, and a spreadsheet of gross fees from two of Defendants' franchises.

Defendants' only contact with the Court has come via email communication with the Deputy Clerk, an Opposition to the instant Motion filed 62 days after the Motion was filed, and an Answer filed 97 days after service of the Summons and Complaint. In the Opposition, Defendants claim an intention to defend the suit, contact local counsel in Norfolk, Virginia, and have their attorney apply for *pro hac vice* status in this Court. ECF No. 10. ¶¶ 8. To date, no local counsel has appeared and no *pro hac vice* application has been received.

On September 3, 2014, the Court set a hearing on the Motion for September 16, 2014, at 10:00 a.m. A Notice of Electronic Filing was mailed to Geraci's home and JCE's place of business. In so doing, the Clerk sent the notice to the same address Defendants listed on their Answer.

The Court held a hearing on Plaintiff's Motion on September 16, 2014. Liberty was represented through counsel. As of 10:00 a.m., Defendants' counsel table was completely empty, having no counsel, party, or representative of either Geraci or JCE. In an effort to provide Defendants with one additional opportunity, the Court waited fifteen minutes to begin the hearing. When Court opened at 10:15 a.m., only Plaintiff was present. During the hearing,

---

[2] Section 10(c) of each franchise agreement states that "[i]n the event that you fail to comply with…the above covenants not to compete, you agree to pay to us, as a genuine estimate of liquidated damages, royalties and advertising amounts set forth in paragraph 4 of this Agreement." Section 4 provides for 14% royalty fees and 5% advertising fees. Defendants have failed to provide any information regarding gross fees for 2014, and Plaintiff has therefore calculated an estimate based on its 2013 numbers. Plaintiff's estimate was revised to $28,820.46 (based on 19% of the 2013 revenues from CA589 and CA582, which totaled $151,686.65) during the motion hearing on September 16, 2014, pursuant to the testimony of Stephen Richard and Plaintiff's Exhibits 1 and 2. The Court's award reflects the revised estimate.

the Court heard sworn testimony from Stephen Richard, Liberty's Director of Business

Intelligence and Data Warehouse.  Mr. Richard calculated for the Court an estimate of the

amount owed under the franchise agreement due to failure to comply with post-term obligations.

The estimates are based on the 2013 gross revenues at two of Defendants' franchises:  CA562

and CA589.  Counsel for Liberty argued that pursuant to the franchise agreements, it is entitled

to 19% of the 2014 gross revenues from both locations.  However, because Defendants have

failed to provide Liberty with any revenue reports for 2014, Liberty has estimated using 2013

figures.  The Court received the gross revenue report for CA589 as Plaintiff's Exhibit 1, and the

gross revenue report for CA562 as Plaintiff's Exhibit 2.  The Court also marked and received the

Court's Exhibit, five email exchanges between the Deputy Clerk and Defendants.  The hearing

concluded with argument from Plaintiff's counsel, wherein Plaintiff again argued for both

damages and injunctive relief.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require the clerk to enter default against a party

from whom affirmative relief is sought when that party has "failed to plead or otherwise defend"

its case. Fed. R. Civ. P. 55(a).  When a plaintiff's claim is not for a sum certain, as in this case,

the plaintiff must apply to the Court for default judgment, and if the party against whom the

judgment is sought has appeared previously, that party must be served with written notice at least

seven days prior to any hearing. Fed. R. Civ. P. 55(b)(2).  Further, Rule 55(b)(2) provides that:

> The court may conduct hearings or make referrals—preserving any federal statutory right
> to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

"Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). A plaintiff's complaint is well-pleaded under the Federal Rules of Civil Procedure when it "contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Default judgments are to be granted sparingly, with consideration to be given to, among other factors, the question of whether a less severe sanction would suffice. *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953-54 (4th Cir. 1987); *United States v. Moradi*, 673 F.2d 725, 727-28 (4th Cir. 1982). The Court is certainly mindful of the Fourth Circuit's strong preference that defaults be avoided and claims disposed of on their merits. *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) (citing *Tazo, Inc. v. Director, Office of Workers Comp. Program, U.S. Dep't of Labor*, 895 F.2d 949, 950 (4th Cir. 1990); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)). When a district court enters default judgment, however, the decision is committed to the sound discretion of the court and shall be reviewed only for abuse of discretion. *Lolatchy*, 816 F.2d at 953-54.

Because a default judgment order may dispose of a matter, the Court must first satisfy itself that it has jurisdiction over the case. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("First, 'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.' Moreover, courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (citations omitted)); *In re Kirkland*, 600 F.3d 310, 315 (4th Cir. 2010) ("Subject matter

6

jurisdiction cannot be forfeited or waived, and can be raised by a party, or by the court *sua sponte*, at any time prior to final judgment."). A plaintiff may bring suit in federal court only if the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1).

### III. DISCUSSION

#### A. Jurisdiction

The Court first addresses jurisdiction. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in question exceeds $75,000. Plaintiff is a Delaware corporation with its principal place of business in Virginia. ECF No. 1. Defendant Geraci is domiciled in California. Defendant JCE is a California corporation. *Id.* The amount in controversy as discussed *supra* is at least $238,448.37.

Whether the Court has personal jurisdiction over each non-Virginia resident Defendant requires a two-step analysis. *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 491 (E.D. Va. 2003) (citing *Peanut Corp. of Am. V. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982)). First, the Court must satisfy itself that jurisdiction is appropriate pursuant to Virginia's long-arm statute, Virginia Code Section 8.01-328.1. Second, the exercise of jurisdiction must comport with the Due Process Clause of the United States Constitution. The Virginia long-arm statute is a "single-act statute," which means one single business transaction is sufficient to confer jurisdiction to Virginia courts. Va. Code § 8.01-328.1(A)(1) ("Courts may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's transacting any business in this Commonwealth.").

Here, Defendants were contractual franchisees of a Virginia corporation, traveled to Virginia for training, and submitted regular reports to Plaintiff in Virginia. Therefore, the Court may exercise personal jurisdiction over each Defendant pursuant to the Virginia long-arm statute. Whether the Due Process Clause permits the exercise of personal jurisdiction turns on whether Defendants have "minimum contacts" such that Defendants "should reasonably anticipate being hauled into court here." *Bay Tobacco*, 261 F. Supp. 2d at 497 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Defendants have established the necessary minimum contacts with Virginia, as their contracting with a Virginia Beach-based company demonstrates an intent to purposefully avail themselves of the privileges and benefits of conducting business with Virginia residents within the meaning of *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Further, as the Supreme Court has recognized, a defendant's consent to suit in the forum state is relevant to the personal jurisdiction inquiry. Section 15(a) of each franchise agreement specifically names Virginia as both the operative law and forum for "all claims which in any way relate to or arise out of [these agreements]." ECF Nos. 1-1, 1-3, 1-5, 1-7, 1-9. Thus, the Court has personal jurisdiction over both Defendant Geraci and Defendant JCE.

Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 § U.S.C. 1391(b)(2) because this contract dispute arises from franchise agreements entered into with a Virginia Beach, Virginia corporation. Further, each franchise agreement, at section 15(b), contains a forum selection clause naming this District as the proper court. In light of the facts pleaded and elicited at the hearing, the Court finds the forum selection clause reasonable, and is thereby required by the precedent of this Circuit to enforce it. *See Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010) ("We begin by noting that when parties to a contract confer jurisdiction and venue on a particular court, as a

general matter, federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable.").

## B. Default Judgment

Having satisfied itself that jurisdiction and venue are proper, the Court now turns to the merits of the Motion. It is clear that Geraci and JCE are in default, for both have failed to file an answer or other responsive pleading within the timeframe required by the Federal Rules of Civil Procedure and the Local Rules. The Answer was filed 97 days after service of the Summons and Complaint, and the Opposition to the instant Motion was filed 62 days after the Motion. Neither Geraci nor JCE have motioned for an extension of time or otherwise explained their repeated dilatory conduct. Further, neither Defendant was present or represented at the motion hearing. In light of these facts, it appears to the Court that Defendants have completely failed to take this matter seriously. Indeed, neither Geraci nor JCE have obtained counsel properly admitted to practice in this Court. Gercai, an attorney licensed to practice law in California, submitted both the Answer and Opposition on behalf of himself and JCE. While Geraci may represent himself *pro se* in this matter, the Court is aware of no precedent that would permit him to represent JCE, a corporate entity. *United States v. Hagerman*, 545 F.3d 579, 582 (7th Cir. 2008) ("[T]he privilege of pro se representation is . . . denied to partnerships . . . ."). *See also Square Ring, Inc. v. Talford*, 2009 WL 1872199 (W.D.N.C. June 29, 2009).

Given that Defendants are in default and that the Clerk has entered default against Defendants, the Court must next address whether notice was required, which depends on whether Geraci and JCE have "appeared" within the meaning of Rule 55, and if so, determine whether Defendants were given sufficient notice. The record is clear that Defendants had not appeared prior to Plaintiff's application for default judgment on July 18, 2014. Defendants' first filing

was made on September 8, 2014, and the Deputy Clerk first made contact with Defendants by email on August 25, 2014. Court's Exhibit, which was received into evidence at the motion hearing, details the numerous attempts made by the Deputy Clerk to contact Defendants about this matter. The Court's contact with Defendants is explained in detail below.

On August 25, 2014, the Deputy Clerk emailed Plaintiff's counsel and Geraci to schedule a hearing on Plaintiff's Motion. The parties were given multiple dates and times from which to choose. Later that day, Geraci responded that he was unfamiliar with the matter and copied Stephen Lopez, his apparent attorney. Geraci instructed the Deputy Clerk to contact Mr. Lopez regarding any litigation.

On August 26, 2014, Geraci emailed the Deputy Clerk indicating that he had accessed Pacer and had viewed the Complaint. Geraci then asked if he was permitted to respond to the Complaint or whether a motion was needed. The Deputy Clerk informed Geraci that as a member of the Clerk's Office, she was unable to provide legal advice. That same day, the Deputy Clerk emailed Geraci's purported attorney Mr. Lopez regarding scheduling the motion hearing. Mr. Lopez simply responded. "[Deputy Clerk], I am in depositions all day."

On August 28, 2014, the Deputy Clerk emailed Geraci at the same email address on which the two corresponded on August 26, 2014, and emailed Mr. Lopez at the same email address on which the two corresponded on August 26, 2014, in order to schedule a hearing on the instant Motion. Both emails were returned by the email provider as undeliverable. The Defendants did not respond.

On September 2, 2014, the Deputy Clerk again attempted to email Defendants regarding scheduling the motion hearing. Once again, the email was returned as undeliverable. Again, the Defendants did not respond.

On September 3, 2014, a Notice of Electronic Filing was mailed to Defendants at CARE Law Group, 817 W. San Marcos Blvd., San Marcos, CA 92078. This is the exact same address Geraci would later use on Defendants' Answer. The notice informed Defendants that a hearing on the Motion for Default Judgment had been scheduled in this Court on September 16, 2014, at 10:00 a.m.

On September 10, 2014, the Clerk's Office called Geraci and left a detailed message regarding the motion hearing, including the date, time, and location. The phone number used was the same phone number Geraci would later use on Defendants' Answer.

As Defendants communicated multiple times with the Court, and submitted two filings, the Court concludes that Defendants have appeared under Rule 55 and are therefore entitled to seven days' notice under that Rule. The Court is satisfied that the requirement was met. Liberty included a certificate of service with its Motion for Default Judgment, filed in July 18, 2014, (nearly two months prior to the hearing) certifying that it had served a copy of its motion to Geraci at his home address and JCE at its San Marcos address (the same address Geraci would later use on the Answer). Additionally, the Deputy Clerk sent notice of the intent to schedule the hearing to Defendants more than two weeks in advance, but it was returned as undeliverable. However, the United States Court of Appeals for the Eleventh Circuit has noted that notice sent to the address on file that is returned as undeliverable is still sufficient under Rule 55(b), reasoning that the fact that a party "made himself impossible to contact cannot prevent the entry of default judgment." *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993). *Accord Chanel, Inc. v. Various John Does Nos. 1-300*, 2009 WL 856452 (D.D.C. March 31, 2009). Notice of the hearing was sent to the same address at which Defendants were served with the Complaint and at the address that Defendants' representative himself used multiple

times when he contacted the Court.  *See also* Charles A. Wright, Arthur R. Miller, *et al.*, 10A

Fed. Prac. & Proc. Civ. § 2687 (3d ed.) ("Notice of an application for the entry of a default

judgment need not be in any particular form. The major consideration is that the party is made

aware that a default judgment may be entered against him."). Defendants were further mailed a

notice of electronic filing 13 days before the hearing and were contacted by phone message six

days in advance.

Having concluded that the procedural strictures of Rule 55 are satisfied, the Court further

finds that entry of default judgment is appropriate. Defendants have been repeatedly made aware

of the existence of this matter and have still failed to comply with the Rules of Procedure. *See*

*Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992) (finding default judgment

proper where defendant did not appear at show cause hearing and did not respond to certified

notices sent by the court). The Court has given Defendants multiple opportunities to

communicate their intentions.   From their repeated intransigence, moreover, it is clear that

Defendants are aware of this suit but have simply decided to ignore it. *See* Charles A. Wright,

Arthur R. Miller, *et al.*, 10A Fed. Prac. & Proc. Civ. § 2685 (3d ed.) (discussing courts'

considerations in deciding whether to enter default judgment). *See, e.g., Pinpoint IT Services,*

*LLC v. Atlas IT Export Corp.*, 2011 WL 2748685, at *11 (E.D. Va. July 13, 2011) (quoting

*Mobil Oil Co. de Venez. v. Parada Jimenez*, 989 F.2d 494, 1993 WL 616863, at *3 (4th Cir.

1993) (unpublished table decision))( "[T]he extreme sanction of judgment by default is reserved

for only cases where the party's noncompliance represents bad faith or a complete disregard for

the mandates of procedure and the authority of the trial court.").

Plaintiff has pleaded and presented sufficient facts for the Court to find that Defendants

have materially breached their franchise agreements with Liberty.  Under Virginia law, a party

breaches a contract if it "without legal excuse fails to perform an obligation in a timely manner." Va.Code.Ann § 59.1-507.1(a). Defendants have failed to make timely payment on the amounts currently due on both the promissory notes and the accounts receivable; remain in possession of Liberty data and records in violation of the post-termination obligations; and have failed to provide an accounting of gross revenues for the year 2014. Each of the aforementioned is a material term of the contract between Liberty and Defendants, and Defendants have breached each stated term. The Court therefore finds Defendants in material breach of both the franchise agreements and the post-termination obligations. For these reasons, Plaintiff's Motion for Default Judgment is **GRANTED**.

## C. Damages

Having found that judgment should be entered in favor of Plaintiff, the Court must next determine the appropriate relief. Although entry of default represents a concession and the factual allegations in the Complaint may be taken as true, a default does not concede the amount demanded. Damages must therefore be proven to the Court, although the Court retains discretion to determine how the amount of damages may be appropriately shown. *E.g., Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794-96 (D. Md. 2010).

Plaintiff submits that it has incurred $267,286.83 in actual damages as a result of Geraci and JCE's breach of franchise agreements[3]. The Court finds its computation method as described at the hearing supported by the evidence presented and **ORDERS** judgment to Liberty in the amount of **$267,286.83.**

---

[3] This figure includes $45,542.33 owed on the promissory notes, $192,924.04 pursuant to the franchise agreements, and $28,820.46 in royalties and advertising fees for the year 2014.

## D. Injunctive Relief

Finally, Liberty requests a permanent injunction requiring Defendants to comply with their post-termination obligations and enforcing the terms of their contractual non-compete agreement. When considering whether to award permanent injunctive relief to a prevailing plaintiff, courts should apply the traditional four-factor test used by courts of equity. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). The prevailing plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* at 391. The Supreme Court held "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity..." *Id.* at 394. As to the first and second factors, Liberty asserts that continued infringement has and will injure its goodwill and reputation. Liberty further argues that its inability to enforce the non-compete clauses would cause additional irreparable harm because "it threatens Liberty's relationship with all franchises." ECF No. 8. The Court agrees. No amount of damages can quantify the potential loss to Liberty's goodwill and its reputation, and failure to enforce the non-compete could send a dangerously damaging signal to other franchisees. The Court further concludes that the balance of hardships weighs in Plaintiff's favor as Defendants are in default and have provided Plaintiff with little alternative recourse. Enforcement of the franchise agreements and non-compete clause is hardly a drastic measure—it simply forces Defendants to comply with their previous contractual obligations. Finally, the public interest will be served by requiring parties to value the sanctity of contract. The agreements in question were consensual, legal, and reasonable contracts, and the

public interest is served by requiring enforcement of their terms.  Therefore, the Court **ORDERS** a permanent injunction as outlined below.

**E. Attorney's Fees and Costs**

Plaintiff also requests an award of costs and attorney's fees.  Each of the promissory notes contained a provision that "[t]he undersigned agrees to pay all attorneys' fees and other costs and expenses that Liberty may incur in connection with the collection or enforcement of this Note."  ECF No 8-1.  A proper fee award is determined by calculating a "lodestar fee." *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998).  The lodestar fee is calculated by multiplying the number of reasonable hours expended times a reasonable rate. *Id.*  The Fourth Circuit has held that the *Johnson* factors are applied in determining the reasonable hours and rate. *See Daly v. Hill*, 790 F.2d 1071, 1077 (4th Cir. 1986).  These factors include:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to properly perform the legal service;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

*Id.* at 1075 n.2.  In addition, "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980), *quoted in Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Moreover, the Fourth Circuit has held that, "A fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall." *Daly*, 790 F.2d at 1078.

Parties may "contract [to adopt] provisions that shift the responsibility of attorneys' fees to the losing party in disputes involving the contract." *Id.* A similar attorney's fees provision of a Liberty promissory note has been enforced in the Norfolk Division of the Eastern District of Virginia. *See JTH Tax Inc., v. Grabert*, 2014 WL 1255278 (E.D. Va. March 26, 2014) (awarding Liberty $1,600 in attorney's fees). The Court therefore finds the attorney's fees provision reasonable and enforceable.

However, the Court is unable to grant Plaintiff's request because Plaintiff has failed to provide the Court with any documentation of its lawyers' labor and expenses in this matter. Liberty bears the "burden to present a *pirma facie* case that the requested fees are reasonable and necessary." *Dewberry*, 284 Va. 485, 495 (citing *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (Va. 1998). Neither the Complaint and Motion nor the evidence presented at the hearing allow Liberty to meet its burden. Therefore, Liberty's request for costs and attorney's fees is **DEFERRED**, and Plaintiff is **ORDERED** to submit (if any) an accounting of its attorney's fees and costs within **TEN (10) DAYS** of the date of this Order

## IV. CONCLUSION

Plaintiff's Motion for Default Judgment against Defendants Geraci and JCE, is **GRANTED**. It is **ORDERED** that judgment be entered on behalf of Plaintiff and against Defendant in the amount of **$267,286.83**. Plaintiff's request for costs and attorney's fees is **DEFERRED**.

Further, the Court enters permanent injunctive relief as follows: Defendants, their agents, servants, employees, attorneys, consultants, affiliates, successors, and/or assigns and/or any other individual or entity within their control or supervision and/or all other persons or entities acting

in concert with Defendants or on their behalf are hereby **ORDERED** within **THIRTY (30) DAYS** of entry of this order to:

1. Discontinue the use of the Mark "Liberty Tax Service" and any marks confusingly similar thereto;

2. Deliver to Plaintiff or its designee the Operations Manual and any updates, which Plaintiff loaned to Defendants;

3. Deliver to Plaintiff or its designee originals and all copies of tax returns, files, and records generated through the use of Plaintiff's Trademark and Trade name;

4. Deliver to Plaintiff or its designee any and all customer contact lists generated while Defendant was a franchisee of Plaintiff;

5. Deliver to Liberty all telephone numbers, listings, and advertisements used in the former Liberty offices;

6. Never divulge or use for the benefit of anyone outside the Liberty system any information concerning customers served by the prior Liberty franchised business;

7. Not directly or indirectly solicit the patronage of any former Liberty customer served by Defendants during the period between December 12, 2003, through January 3, 2014, for the purpose of offering tax preparation, electronic filing or bank products, within former Liberty territories CA562 and CA589, or within 25 miles, for two years from the date of the entry of this Order;

8. Not directly or indirectly prepare or electronically file income tax returns or offer bank products within Liberty territories CA562 and CA589, or within 25 miles, for two years from the date of the entry of this Order.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties.  The Order shall be sent to Defendants both at Geraci's previous address of record and to the address used on Defendants' most recent filing with the Court, ECF No. 11.

**IT IS SO ORDERED**.


Norfolk, Virginia
October 2 , 2014

Raymond A. Jackson
United States District Judge